## CONSUMER LOAN NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT
### Do not close before 10/26/2023

| | |
|---|---|
| LENDER: 21st Mortgage Corp. 620 Market St. Suite 100 Knoxville, TN 37902 | NMLS No. 2280 |
| Reference No ▇▇▇▇▇ | |

Borrower's Name: Zibiah Danyell Bolton

Borrower's Address: 6 Lobie Bolton Rd
BEAUMONT, MS 39423

In this Consumer Loan Note ("Note"), "Borrower" refers to all persons who sign this Note as "Borrower" and "Co-Borrower", jointly and severally. "Lender" refers to 21st Mortgage Corporation ("21st Mortgage"), and its successors and assigns. Other capitalized terms are defined in the disclosures on this page and in the section of this Note titled, "Itemization of Amount Financed." Borrower promises to advise Lender in writing of any change of Borrower's mailing address while this Note is in effect. Lender should send any papers or notices concerning this Note to Borrower's mailing address. On the date of this Note, Borrower finances with Lender the manufactured home described below, together with the related services, furnishings, equipment, appliances and accessories included with the manufactured home (collectively, "Manufactured Home").

**Description of Manufactured Home:** ☒ New    ☐ Used

| MANUFACTURER: Clayton | YEAR: 2024 | APPROX. LENGTH: 76 | APPROX. WIDTH: 16 |
|---|---|---|---|
| SERIAL NO. | SOU018499ALAC | SERIAL NO. | |
| SERIAL NO. | | SERIAL NO. | |
| SERIAL NO. | | SERIAL NO. | |

**PROMISE TO PAY:** Borrower promises to pay Lender the "Loan Amount" as listed under the "Itemization of Amount Financed" plus interest. When Borrower signs this Note, borrower will also pay Lender any "Prepaid Finance Charge" shown in the "Itemization of Amount Financed." Borrower authorizes Lender to include the Prepaid Finance Charges in the Loan Amount. Lender will compute and charge interest on the unpaid amount of the Loan Amount from the Note date at the yearly rate of **12.74%** (the "Note Rate"). When Lender calculates interest, every year shall have 360 days and every month shall have 30 days. Borrower promises to pay interest at the Note Rate on the unpaid amount of the Loan Amount of this Note until it is paid in full. Interest after the final scheduled maturity date on this Note, however, shall not exceed the maximum rate allowed by state law.

**Borrower's Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due | Scheduled Maturity Date |
|---|---|---|---|
| 300 | $986.73 | Monthly, beginning 12/1/2023 | 11/1/2048 |

BORROWER FURTHER PROMISES to pay Lender monthly payments in the number and amounts of payments shown in Borrower's Payment Schedule. Borrower's first payment will be due on the first date shown in Borrower's Payment Schedule, and subsequent payments will be due on the same day of each month after that.

LENDER WILL APPLY EACH PAYMENT RECEIVED AS OF ITS SCHEDULED DUE DATE. If on the final scheduled payment due date, Borrower still owes amounts under this Note, Borrower will pay those amounts in full on that date (the "Maturity Date"). Borrower will make all payments to 21st Mortgage Corp., 620 Market St. Suite 100, Knoxville, Tennessee 37902, or any other address to which Lender directs Borrower to send Borrower's payments.

<div style="border:1px solid black; text-align:center; font-weight:bold;">

# EXHIBIT

# A

</div>

Borrower's Initials

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid should Borrower make all payments as scheduled. |
|---|---|---|---|
| 13.383% | $210,718.00 | $85,301.00 | $296,019.00 |

### INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 12.740% |
| Principal + Interest Payment | $986.73 |
| Est. Taxes + Insurance (Escrow) | $179.31 |
| Total Est. Monthly Payment | $1,166.04 |

**Security:** Borrower gives Lender a security interest in:

☒   The Manufactured Home, which will be located at 6a Lobie Bolton Rd, Beaumont, MS 39423

**Late Charge:** If a payment is more than 15 days late, Borrower will be charged the greater of $5 or 4% of the unpaid amount of such payment of principal. Other references in this Note to the "Late Charge" refer to the amount shown in the Delinquency and Default Section below.

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty.

**Assumption:** Someone buying the Manufactured Home may not be allowed to assume the remainder of the Borrower's obligations under this Note on the original terms.

**Other Information:** Refer to the rest of this Note for additional information about nonpayment, default, any required payment in full before the scheduled date and prepayment refunds and penalties.

**MDIA Refinancing Warning:** There is no guarantee that Borrower will be able to refinance the loan to obtain a lower interest rate and/or payment.

**SECURITY INTEREST:** To secure payment of all sums due or which become due under this Note, and Borrower's performance of all other terms of the Note, Borrower grants Lender a first priority security interest in (1) the Manufactured Home, and all accessions, attachments, accessories, replacements and additions to the Manufactured Home, whether added now or later; (2) the "Property" described in any mortgage, deed of trust, or assignment Borrower gives to Lender; (3) Borrower's rights to refunds of premiums for and payments under, and proceeds of any insurance or any extended warranty or service contract purchased with the proceeds of this Note; (4) any amounts held in escrow by Lender for Borrower; and, (5) proceeds and products of all of the foregoing (collectively, the "Collateral"). Lender's security interest shall remain in effect until Borrower pays, in full, all amounts due under the Note. Despite any other provision of the Note, however, Lender is not granted, and does not have, a non-purchase money security interest in household goods, to the extent such a security interest is prohibited by applicable law. Borrower will pay any filing or recording fees necessary for Lender to obtain and hold a first priority security interest. To the extent allowed by law, Borrower also agrees to pay any release, discharge or termination fees, after the Borrower pays the Note in full. Borrower agrees to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect Lender's security interest in the Manufactured Home. Borrower authorizes Lender to sign Borrower's name to any financing statement or application or other document necessary to perfect the security interest granted by Borrower herein. If Lender is taking a security interest in real property, cooperative shares, or proprietary lease, such interest is reflected in a mortgage, deed of trust, or assignment signed in conjunction with this Note.

**Borrower's Initials**

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

MS Version 8/2/2023                                                                 Page 2 of 10

**ITEMIZATION OF AMOUNT FINANCED:**

| | |
|---|---|
| 1. Cash Price | |
|   a. Manufactured Home** | $92,000.00 |
|   b. Sales Tax | $2,760.00 |
|   c. Total Cash Price (1a plus 1b) | $94,760.00 |
| 2. Down Payment | |
|   a. Cash Down Payment | $9,476.00 |
|   b. Net Trade-In Allowance | |
|     Trade-in: | |
|     Length: Width: | |
|     Liens: | |
|   c. Other Credits: | |
|   d. Total Down Payment (2a plus 2b plus 2c) | $9,476.00 |
| 3. Unpaid Cash Price for Purchase or Refinance | |
|   a. Unpaid Portion of Cash Price (1c minus 2d) OR | $85,284.00 |
|   b. For a Refinanced Loan, Amount Paid to Others | |
| 4. Amounts paid to others on Borrower's behalf | |
|   a. Financed | |
|     i. Flood Determination/Monitoring Fee | $8.00 |
|     ii. Certificate of Title Fees | $9.00 |
|   b. Paid in Cash | |
|     i. Homeowner's Insurance Premium | $1,459.00 (Paid By - Borrower - At Closing) |
| 5. Prepaid Finance Charges (includes items paid to third parties; items may be financed in part and paid in cash in part) | |
|   a. Financed | |
|     i. Origination Points/Fee | $3,730.00 |
|   b. Paid in Cash | |
| 6. Loan Amount (3 + 4a + 5a - Seller Credit of $0.00 - Lender Credit of $0.00) | $89,031.00 |
| 7. Prepaid Finance Charges (total of all items in 5) | $3,730.00 |
| 8. Amount Financed (6 minus 7) | $85,301.00 |
|   ** Lender may retain, or receive, a portion of these amounts | |
| Security interest termination, release, discharge or satisfaction fees paid upon termination will vary based upon applicable law. This fee is not paid by Borrower at closing. | |

THIS SPACE LEFT INTENTIONALLY BLANK

Borrower's Initials

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

*MS Version 8/2/2023*                                                                                  *Page 3 of 10*

## PROPERTY INSURANCE

**PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS NOTE. BORROWER HAS THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT AND IS REASONABLY ACCEPTABLE TO LENDER.** Borrower elects to finance through Lender the below listed property insurance of the specified type, term and premium.

| Hazard Insurance Provider | Term | Premium |
|---|---|---|
| N/A | N/A | N/A |

\* A separate flood or wind insurance policy may or may not be reflected in the information above or financed as part of the loan. Borrower should refer to the appropriate insurance policy documents for more details.

Borrower's signature below indicates Borrower's election to finance the above listed property insurance for the type, term and premium shown.

X _____   10/26/2023

Ziblah Danyell Bolton                            Date

**PROPERTY INSURANCE:** Borrower is required to insure the Manufactured Home against physical damage, including loss by fire, hazards included within the term "extended coverage," and any other hazards for which Lender requires insurance, for the term of the Note at Borrower's expense. If Borrower financed the premium, the premium is financed over the term of the Note, even though the term of insurance is less than the Note term. The Borrower must obtain the types and amounts of insurance coverage required by Lender, including flood insurance if applicable. The insurance policy must contain a loss payable clause protecting Lender (as Lender's interest may appear), and provide for at least a 10 day notice of cancellation to Lender. Borrower agrees to provide written proof of such coverage to Lender within 5 days of Lender's request. BORROWER HAS THE RIGHT TO CHOOSE THE ENTITY THROUGH WHICH THE PROPERTY INSURANCE IS OBTAINED. Lender reserves the right to refuse to accept, for reasonable cause, an insurer chosen by the Borrower. If Borrower's insurance coverage expires or is canceled prior to payment in full of this Note, Borrower must obtain coverage in the amounts, types, and for the periods that Lender requires at Borrower's expense for the remaining term of the Note. Lender's property insurance coverage requirements can change during the term of the Note. Should Borrower fail to provide or maintain property insurance or fail to provide Lender with satisfactory evidence of coverage, or should the property insurance, for any reason, not protect Lender's interests, Lender, in its sole discretion, may obtain property insurance that meets its requirements, but is under no legal obligation to do so. Before obtaining insurance in these circumstances, Lender will, in good faith, attempt to inform Borrower in writing of the need for Borrower to obtain property insurance and/or to provide evidence thereof. If obtained by Lender, Lender will add the cost of the insurance to the amount due under the Note. That amount will become due and payable upon demand by the Lender, in payments added to Borrower's scheduled payments, or as otherwise required by Lender. Lender may charge Borrower interest on such cost at the Note Rate, unless prohibited by applicable law. The property insurance obtained by Lender may have material differences from insurance initially financed under the Note or from insurance obtained by the Borrower initially or at any time during the term of the Note. Such insurance may be significantly more expensive to Borrower than if Borrower obtained the insurance. **Consequently, Lender makes the following disclosures to Borrower: (a) The property insurance that Lender obtains is intended solely to protect the Lender's interest hereunder, and Lender may not obtain coverages beyond those to insure loss of or damage to the Manufactured Home; in particular, such insurance may not provide coverage for personal effects, adjacent structures, medical expenses or personal liability; additionally, such coverage may not insure**

PARAGRAPH CONTINUED ON THE NEXT PAGE

Borrower's Initials _____

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

the Manufactured Home in an amount equal to the Loan Amount due under this Note and, consequently, in the event of loss or damage, the insurance may not pay the full amount of the Loan Amount of the Note; (b) If Lender obtains this insurance due to Borrower default, Borrower acknowledges and agrees that Lender has no duty to obtain insurance on behalf of Borrower which is the least expensive, or which has a competitive marketplace premium or any other particular feature or special benefit; (c) Lender or its affiliates may be reimbursed for expenses and may profit from taking action to cure Borrower's default by providing and maintaining such insurance; (d) Borrower's execution of this Note authorizes Lender to provide third parties with any information necessary to obtain insurance on the Manufactured Home and monitor the status of such insurance; and (e) Borrower may, as stated above, at any time, including after Lender obtains property insurance on Borrower's behalf, obtain insurance through an agent or insurer of Borrower's choice. Upon so doing, Borrower may provide Lender with sufficient evidence of insurance coverage, at which time, Lender will cancel the insurance coverage it obtained on Borrower's behalf, obtain any refund due on the unearned portion of the premium, and apply the refund to the Loan Amount of the Note. Property insurance proceeds (whether such insurance has been obtained by Borrower or Lender) shall be applied to the restoration or repair of the Manufactured Home, if it is economically feasible and does not lessen the Lender's security interest in the Manufactured Home. If this is not the case, or if the insurer determines that the Manufactured Home represents a total loss under the coverage, Lender will apply such insurance proceeds to reduce all amounts owing under this Note, whether or not such amounts are due and payable. Borrower authorizes Lender to (a) adjust or settle Borrower's claim for loss under such insurance; (b) sign Borrower's name to any check, draft or other documents necessary to obtain such insurance proceeds; and (c) hold such insurance proceeds until Lender has the opportunity to inspect the Manufactured Home and ensure that work to restore or repair the Manufactured Home is completed to Lender's satisfaction, without incurring an obligation to pay Borrower earnings or interest on such proceeds. Lender may disburse proceeds in a single payment or a series of payments and Borrower authorizes any insurer to make such payment directly to Lender. If insurance proceeds paid to Lender do not satisfy all amounts Borrower owes to Lender under this Note, Borrower is responsible for paying the balance.

**BORROWER'S RIGHT TO PREPAY: BORROWER MAY PREPAY ANY AMOUNTS DUE UNDER THIS NOTE AT ANY TIME WITHOUT PENALTY.** A Principal only payment is known as a "Prepayment." Lender will not treat a payment as a Prepayment unless Borrower previously made all monthly payments of principal and interest and fully paid and satisfied all other obligations due under this Note. If Borrower meets these conditions, Borrower may make a Prepayment by sending such Prepayment in accordance with the instructions provided by Lender in a monthly billing statement, or payment coupon, or otherwise as directed by Lender. Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. If Borrower (1) prepays this Note in full, or (2) defaults and fails to cure the default and Lender demands payment of the entire balance due on this Note, no portion of any Prepaid Finance Charge will be refunded. All Prepaid Finance Charges are earned at the time this Note is made.

**ESCROW ITEMS:** To the extent permitted by law, Lender may, at Lender's option, require Borrower to make payments in addition to those set forth in Borrower's Payment Schedule ("Escrow Payments") which Lender will collect and hold for (1) the payment of property insurance premiums required under this Note, (2) the payment of taxes and assessments, and (3) other items which might attain priority over Lender's security interest (each, an "Escrow Item"). Lender will use Borrower's Escrow Payments to pay Escrow Items as they come due. **THE BORROWER'S PAYMENT SCHEDULE IN THIS NOTE DOES NOT INCLUDE ANY AMOUNT TO BE PAID UNDER ANY SUCH ESCROW ACCOUNT.**

Borrower's Initials

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

MS Version 8/2/2023                                                                                                      Page 5 of 10

**SERVICING CHARGES:** Borrower agrees to pay all reasonable charges for Lender's performance of additional services requested by Borrower in connection with the servicing of this Note, to the extent permitted by applicable law.

**ADVANCES TO PROTECT THE COLLATERAL:** If Borrower fails to pay for required insurance, if Borrower fails to pay park or lot rent (and any other related charges), if Borrower fails to satisfy taxes, assessments, or other liens or encumbrances against the Manufactured Home, if Borrower fails to keep the Manufactured Home in good repair or if Borrower fails to make any other payments required by this Note or applicable law, Lender may (but is not required to) make such repairs or payments as Lender chooses. Lender will add any and all such payments and any amounts Lender pays to protect or enforce Lender's security interest to the amount Borrower owes Lender under this Note, and all such amounts will be secured by the Collateral. At Lender's sole option, Lender may (1) demand that Borrower repay these amounts immediately, or (2) add these amounts to Borrower's regularly scheduled payments, or (3) add these amounts as additional installments due, or (4) add these amounts to the final installment due on this Note. Unless prohibited by law, Borrower agrees to pay interest at the Note Rate on any amounts that Borrower does not repay immediately.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than 15 days late, Borrower will be charged the greater of $5 or 4% of the unpaid amount of such payment of principal. If any check, negotiable instrument of withdrawal, electronic payment draft or any other instrument is dishonored by Borrower's financial institution, Borrower will pay a fee of $20.00, in addition to being required to make payment on the item. Borrower will be in default under this Note if: (1) Borrower fails to make any payment when due; (2) Borrower otherwise fails to perform any of Borrower's obligations under this Note or under any mortgage, deed of trust, or assignment which secures this Note; (3) Borrower dies or becomes legally unable to manage Borrower's affairs; (4) any statement of fact, representation or warranty Borrower makes to Lender in Borrower's application for credit, any other document submitted to the Lender or signed by Borrower in connection with this Note, or in any Note document is false, misleading, inaccurate, or incomplete; or (5) Borrower files a petition in bankruptcy and either discharges or does not reaffirm the debt, or a party files a petition in bankruptcy against Borrower. In the event of Borrower's default, Lender will give Borrower notice of the default and right to cure the default ("Notice of Default"). Borrower is not entitled to a Notice of Default if Borrower abandons or voluntarily surrenders the Manufactured Home, or if other extreme circumstances exist. Borrower is not, under any circumstances, entitled to a Notice of Default more than twice in any one year period. If Borrower does not cure the default within 30 days after the postmarked date of the Notice of Default, or if a Notice of Default is not required to be sent, Lender may (1) accelerate the maturity of the debt and require Borrower to pay Lender the entire remaining balance and all other amounts due under the Note, (2) require Borrower to make the Manufactured Home available to Lender, (3) take legal action against Borrower, (4) repossess the Manufactured Home, (5) enforce such rights and remedies available to Lender under the Uniform Commercial Code and other applicable law, and (6) foreclose on the real property, if applicable. Lender, at its sole option, may elect to sever and remove the Manufactured Home from any real property where it is located, regardless of whether the real property secures this Note. In the event of default, Borrower also agrees to pay Lender's expenses for (a) reasonable attorney's fees permitted under law after referral to an attorney who is not a salaried employee of the Lender; (b) court costs and disbursements; and (c) costs of repossessing the Manufactured Home including the costs of storage, reconditioning, and resale. Before Lender sells the Manufactured Home, Borrower can get the Manufactured Home back if Borrower either (1) pays off the Note by paying Lender the entire remaining balance and all other amounts due under the Note (redeem), or (2) cures the default by paying Lender the amounts which are past due, including Late Charges (reinstate).

PARAGRAPH CONTINUED ON THE NEXT PAGE

Borrower's Initials

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

MS Version 8/2/2023                                                                                        Page 6 of 10

Regardless of whether Borrower redeems or reinstates, and before Borrower can get the Manufactured Home back, Borrower must also (1) pay Lender the cost of taking, storing and redelivering the Manufactured Home and other expenses Lender incurs; (2) pay Lender all other charges and other expenses provided for under this Note; (3) pay any amounts advanced by Lender to protect the Collateral, without regard to any agreement to repay such amounts advanced on a periodic basis, including but not limited to unpaid insurance premiums, park or lot rent, taxes, assessments or similar items; and (4) cure any other defaults. Borrower's rights to redeem and/or reinstate end upon sale of the Manufactured Home unless otherwise required by law. All rights and remedies under this Note and any mortgage, deed of trust, or assignment executed herewith are cumulative, but Borrower's right to a written notice of default and 30 days to cure, as set forth in this Note, shall not be affected by any inconsistent provision of any mortgage, deed of trust, or assignment. Any personal property of Borrower's located in or attached to the Manufactured Home and not subject to Lender's security interest may be held by Lender without liability if the Lender repossesses the Manufactured Home. Borrower will be deemed to have waived any claim to such personal property unless written demand by certified mail is made upon Lender within twenty-five (25) days after repossession. If Borrower fails to give Lender such written demand, Lender may dispose of such personal property.

**INFORMATION SHARING:** Lender may investigate Borrower's credit history and credit capacity in connection with establishing, modifying, extending, and/or enforcing Borrower's account. Lender may report information about Borrower's account to credit bureaus. Late payments, missed payments, or other defaults on Borrower's account may be reflected in Borrower's credit report. Lender may also verify Borrower's employment, income, assets, and debts; and anyone receiving a copy of this Note is hereby authorized to release such information to Lender. Borrower authorizes Lender to release to third parties any information necessary to monitor the status of insurance on Borrower's Manufactured Home, and to obtain the insurance described in this Note. If Borrower's Manufactured Home is on rented property or property that is not owned by Borrower, Borrower authorizes Lender and Borrower's landlord (or the property owner) to exchange information as to Borrowers obligations to Lender under this Note and the status of such obligations, information relating to Lender's security interest in Borrower's Manufactured Home, and information regarding the lease or arrangement between Borrower and landlord (or the property owner), as well as the obligations and status of such obligations to landlord (or the property owner). Whether or not the Borrower rents the Manufactured Home to a party in accordance with the terms of this Note, Borrower authorizes Lender and Borrower's renter to exchange information as to Lender's security interest in Borrower's Manufactured Home and the rental agreement or arrangement, as well as to the obligations, and the status of such obligations of Borrower to Lender under this Note. This provision also applies to any Co-Signer who executes this Note.

**OTHER TERMS AND CONDITIONS:** The placement of the Manufactured Home is material to Lender's approval and underwriting, therefore Borrower will not move the Manufactured Home without Lender's prior written consent. Borrower will not sell the Manufactured Home without Lender's prior written consent. Borrower agrees that the Manufactured Home is, and shall remain, during the term of this Note, personal property. Unless Lender gives prior written consent, Borrower shall not allow the Manufactured Home to become a part of real estate or to lose its status as personal property under applicable law. Borrower will not encumber or abandon the Manufactured Home, nor allow any lot lien, landlord lien, or similar lien, which may by law be superior to Lender's security interest, to encumber the Manufactured Home. Borrower will not use the Manufactured Home for illegal activity. Borrower will not use the Manufactured Home for business or hire, or rent it to another party, without obtaining Lender's prior written consent. Borrower will pay promptly all taxes, assessments, and any liens and encumbrances on the Manufactured Home. Borrower will notify Lender promptly of any loss or damage to the Manufactured Home, as well as any condemnation, confiscation or theft of the Manufactured Home.

<div align="center">PARAGRAPH CONTINUED ON THE NEXT PAGE</div>

**Borrower's Initials**

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

MS Version 8/2/2023                                                                 Page 7 of 10

Upon Lender's request, Borrower will promptly provide Lender with proof satisfactory to Lender that: (1) Borrower has the insurance required under this Note; (2) Borrower has paid all taxes assessed against the Manufactured Home; (3) Borrower has paid all park or lot rent (and any other related charges) due; (4) Lender holds the only lien against the Manufactured Home; (5) the Manufactured Home is in good condition and repair; and (6) Borrower has complied with all of the promises Borrower made in this Note. Lender may inspect the Manufactured Home at any time. If Borrower is married, and residing in a community property state, both Borrower's community property and separate property are liable for all payments under this Note. Borrower waives all marital rights, homestead exemption and other exemptions relating to the Collateral. Borrower will cooperate with Lender regarding any requests after closing to correct any errors with respect to this Note or the transaction and agrees to provide any and all additional documentation deemed necessary by Lender to complete this transaction. Lender may rely on a telecopy, photocopy, or electronically imaged copy of this Note as if it were an original, including use in legal proceedings or arbitrations. Borrower acknowledges that any broker or other third party used to facilitate this transaction may receive compensation from Lender for its services.

**ASSUMPTION:** Someone buying the Manufactured Home may not be allowed to assume the remainder of the Borrower's obligations under this Note on the original terms.

**ASSIGNMENT:** Lender may assign this Note to any person or entity. All rights granted to Lender under this Note shall apply to any assignee of this Note.

**WAIVER AND MODIFICATION:** Lender's waiver of any default shall not constitute a waiver of any other default. The procurement of required property insurance, or the payment of taxes, or other liens, or other charges, by Lender shall not be a waiver of Lender's right to accelerate the maturity of this Note and declare default herein. To the extent permitted by law, Borrower agrees to give up Borrower's rights to require Lender to do certain things. Borrower does not give up any rights that are provided in this Note. Unless the law or this Note provides otherwise, Lender is not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or, (3) give notice that Lender intends to make, or is making, this Note immediately due.

**WARRANTIES:** LENDER MAKES NO WARRANTIES ON THE MANUFACTURED HOME, AND EXPRESSLY EXCLUDES ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, UNLESS GIVEN TO BORROWER BY LENDER IN WRITING AT THE TIME OF SALE. BORROWER AGREES THAT THE YEAR OF THE MANUFACTURED HOME IS FOR IDENTIFICATION PURPOSES ONLY AND MAY NOT BE THE BASIS FOR A WARRANTY OR OTHER CLAIM AGAINST LENDER. THE ABOVE DISCLAIMERS DO NOT AFFECT ANY WARRANTIES COVERING THE MANUFACTURED HOME THAT MAY BE PROVIDED BY THE MANUFACTURER, OTHER THIRD PARTIES, OR THAT ARE REQUIRED BY LAW.

**VALIDITY AND EFFECTIVENESS:** Wherever possible each provision of this Note shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Note is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, however, the remainder of such provision or the remaining provisions of this Note shall not be invalidated. This Note shall be governed both as to issues of formation and performance by the laws of the State of Mississippi and applicable federal law. This Note shall have no effect until and unless signed by Borrower and Lender. Lender does not intend to charge or collect any interest, charge, or fee greater than the law allows. If Lender charges or collects any amount greater than what the law allows, Lender will apply the excess to the Loan Amount and any other amounts due under the Note and shall refund any excess. Lender will treat any amount applied to the Loan Amount as a partial Prepayment.

Borrower's Initials ⬚

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

**ENTIRE AGREEMENT:** This Note, any separate escrow agreement, and any mortgage, deed of trust, or assignment, together, the "Entire Agreement Documents," shall constitute the entire agreement between Borrower and Lender. To the extent permitted by applicable law, Borrower agrees that no representations, oral or written, have been made to Borrower to induce Borrower to enter into the Entire Agreement Documents, except as set forth therein.

**GUARANTY:** Any Co-Signer signing the guaranty of this Note agrees that all amounts owed under this Note will be paid when due. Co-Signer's obligation continues even if Borrower is released or if Lender waives or delays enforcement of any rights under this Note. Lender need not give Co-Signer notice of any such waiver, delay or release. See Notice to Co-Signer before signing this guaranty.

THIS SPACE LEFT INTENTIONALLY BLANK

Borrower's Initials

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

MS Version 8/2/2023

Page 9 of 10

TO CONTACT 21ST MORTGAGE CORPORATION ABOUT THIS ACCOUNT CALL (865) 523-2120 OR 1-800-955-0021.

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR (BORROWER) COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR (BORROWER) SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR (BORROWER) HEREUNDER.

---

### NOTICE TO THE CONSUMER

(1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE NOTE YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS; (3) BY SIGNING THIS NOTE, YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE; AND, (4) AT ANY TIME, YOU HAVE THE RIGHT TO PAY IN ADVANCE THE LOAN AMOUNT DUE UNDER THIS NOTE WITHOUT PENALTY.

SIGNATURE OF BORROWER(S): "Borrower" refers to all persons who sign this Note as "Borrower" and "Co-Borrower", jointly and severally. Borrower's signature(s) below indicates the following: 1) Borrower has fully and completely read all of this Note; 2) Borrower has consulted independent legal counsel to clarify any matters, if Borrower deemed such was necessary; 3) Borrower has no questions regarding any matters contained in this Note and understands all terms, conditions and obligations set forth in this Note; and, 4) Borrower agrees to fully satisfy and abide by all terms, conditions and obligations set forth in this Note.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

X _(signature)_     10/26/2023
Zibiah Danyell Bolton     Date

---

NOT VALID UNLESS ACCEPTED BY LENDER: _(signature)_
21ST MORTGAGE CORPORATION

By _(signature)_   3/25/24
Printed Name   Title   Date

Initialing below is not necessary. Borrower(s) should sign above.

Borrower's Initials _(initials)_

21st Mortgage Corporation NMLS #2280 • 620 Market Street, Suite 100, Knoxville, TN 37902
1-800-955-0021 • www.21stmortgage.com • Brian Lee NMLS #1535710

# CERTIFICATE OF TITLE



| Form # 79-001 | **STATE OF MISSISSIPPI** | **ORIGINAL** |
|---|---|---|

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| SOU018499ALAC | SNRG | 2024 | MOVE ON UP | HS | MS2007624960 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 04/26/2024 | 10/26/2023 | | NEW | MH | EXEMPT |

**OWNER(S)**

BOLTON, ZIBIAH
6A LOBIE BOLTON RD
BEAUMONT MS 39423-2432

**BENEFICIARY**

**BRANDS**

☐ **Fully Autonomous Vehicle**

**1ST LIENHOLDER**

21ST MORTGAGE CORP
620 MARKET ST STE 100
KNOXVILLE TN 37902-2207

DATE:  10/26/2023

**2ND LIENHOLDER**

DATE:

**MAIL TO**

21ST MORTGAGE CORP
PO BOX 477
KNOXVILLE   TN 37901-0477

M4 - 4



LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

**1ST LIEN** _____ **BY** _____
                         (LIENHOLDER)                                                                              (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ **20** ____

**2ND LIEN** _____ **BY** _____
                         (LIENHOLDER)                                                                              (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ **20** ____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS



THE **26TH** DAY OF **APRIL** 20**24**

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1. Mississippi Code of 1972. and subject to the provisions thereof.

CONTROL NUMBER

O  05464673

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**

**\*\*\*NOTICE: ANY ALTERATION OR ERASURE VOIDS THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW\*\*\***

Federal and State Law requires that you state the mileage in connection with the transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page

Name_____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

_____
ODOMETER READING (No Tenths)

**SELLER:**
Signature(s) _____ Printed Name(s) _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page

Name_____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

_____
ODOMETER READING (No Tenths)

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page

Name_____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

_____
ODOMETER READING (No Tenths)

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page

Name_____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

_____
ODOMETER READING (No Tenths)

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## LIENHOLDER TO BE SHOWN ON NEW TITLE

Lien in favor of _____

whose address is _____

SCRAPPED, DISMANTLED OR DESTROYED VEHICLE - This is to be filled in by Vehicle Owner. Certificate of Title must be mailed or delivered to the Mississippi Department of Revenue. I/we hereby warrant that the vehicle described on the reverse side of this Certificate was scrapped, dismantled, or destroyed on _____ 20____

Owner's Signature